23 So.3d 1119 (2009)
Rosalyn KENDALL
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION.
1061472.
Supreme Court of Alabama.
May 15, 2009.
*1120 Richard F. Horsley and Lindsey O. Hill of King, Horsley & Lyons, LLC, Birmingham, for appellant.
W. Evans Brittain of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellee.
BOLIN, Justice.
Rosalyn Kendall appeals from a summary judgment in favor of United Services Automobile Association ("USAA") on her claim seeking underinsured-motorist ("UIM") benefits.
On December 17, 2002, Rosalyn Kendall was operating her vehicle on Highway 143 in Elmore County ("the County") when Angelia Mercer, an employee of the Elmore County District Attorney's office, failed to stop at a red light and collided with Kendall's vehicle. Mercer was acting within the line and scope of her employment with the County at the time of the accident. Kendall suffered severe and permanent injuries as the result of the accident, and she sued the County and Mercer seeking damages for her injuries.
At the time of the accident, Kendall was insured by an automobile-insurance policy issued by USAA. The USAA policy contained an uninsured/underinsured-motorist provision, which stated as follows:
"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because [bodily injury] sustained by a covered person and caused by an auto accident."
The County offered Kendall $100,000, its insurance-policy limits, to settle her claims against it and Mercer. It is undisputed that Kendall's medical expenses exceeded the County's policy limits of $100,000. On April 4, 2003, Kendall notified USAA of the County's offer to settle her claims for its policy limits of $100,000. Kendall also demanded payment from USAA of $75,000, the policy limit for UIM's coverage. On May 5, 2003, USAA gave its permission to Kendall to settle her claims with the County and waived its rights of subrogation. Subsequently, Kendall settled her claims against the County and Mercer for $100,000. On June 20, 2003, Kendall again demanded from USAA the payment of the UIM policy limits. USAA refused to pay to Kendall the policy limits of the UIM coverage of Kendall's policy with USAA because it claimed that the County's liability was limited by statute to $100,000 and Kendall had received that amount.
On September 21, 2006, Kendall sued USAA, seeking a judgment declaring her rights under the policy and an award of UIM benefits under the policy. On December *1121 12, 2006, USAA moved for a summary judgment, arguing that § 11-93-2, Ala.Code 1975,[1] caps the County's liability at $100,000, and that, because Kendall had already settled her claims against the County and Mercer for $100,000, she is no longer "legally entitled to recover" damages against the County and, therefore, she cannot recover the UIM benefits under her policy with USAA in this case. On February 28, 2007, the trial court denied USAA's motion for a summary judgment.
On April 5, 2007, USAA moved the trial court to reconsider its denial of USAA's motion for a summary judgment on the issue whether Kendall could recover UIM benefits in this case when she had already recovered $100,000 from the County, which is the limit of the County's liability under the damages cap of § 11-93-2, Ala.Code 1975. USAA submitted in support of its motion State Farm Mutual Automobile Insurance Co. v. Causey, 509 F.Supp.2d 1026 (M.D.Ala.2007). On May 30, 2007, the trial court set aside its order of February 28, 2007, and entered a summary judgment in favor of USAA. Kendall appeals.

Standard of Review
In reviewing the disposition of a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).

Discussion
USAA argues that Kendall cannot recover UIM benefits under her policy in this case because, it says, she had already recovered from the County the statutory maximum of $100,000 permitted by § 11-93-2; therefore, it argues, Kendall was no longer "legally entitled to recover" damages from the County. Kendall argues that her expenses for the injuries she incurred exceed the $100,000 she received in settlement of her claims against the County and Mercer and that she is entitled to UIM benefits under her policy in this case in order to be made whole and that her right to the UIM benefits cannot abrogated by the damages cap in § 11-93-2.
The uninsured-motorist statute provides, in part:
"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered ... unless coverage is provided ... in limits for bodily injury or death ... for the protection of persons insured thereunder who are legally *1122 entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom...."
§ 32-7-23(a), Ala.Code 1975.
In Ex parte Carlton, 867 So.2d 332 (Ala. 2003), the plaintiff was injured in an automobile accident while acting within the line and scope of his employment with a landscaping company. The plaintiff was a passenger in a vehicle owned by his employer and being driven by a co-employee when the co-employee negligently turned in front of an oncoming vehicle. The plaintiff received workers' compensation benefits from his employer for the injuries he sustained in the accident. The plaintiff also sought uninsured-motorist benefits under a policy that his mother had with State Farm Mutual Automobile Insurance Company, which named him as an insured. State Farm refused to pay the uninsured-motorist benefits. Both the plaintiff and State Farm filed separate actions, and the two cases were consolidated. State Farm contended that the plaintiff could not recover uninsured-motorist benefits in that he was not "legally entitled to recover" from the negligent driver because the exclusivity-of-remedy and the co-employee-liability provisions of the Workers' Compensation Act barred his suing the co-employee on a claim of negligence. The trial court disagreed with State Farm's position and awarded the plaintiff $50,000, which was the limit of his mother's uninsured-motorist coverage. The Court of Civil Appeals reversed the trial court's decision, and this Court granted the plaintiff's petition for a writ of certiorari. Ex parte Carlton, 867 So.2d at 333.
In affirming the judgment of the Court of Civil Appeals, this Court accorded the statutory language "legally entitled to recover" a plain-meaning interpretation and overruled prior decisions that had expanded uninsured-motorist coverage beyond the plain language of the uninsured-motorist statute. This Court stated:
"Today we return to the point from which this Court never should have departed  the language of the statute. The language of the uninsured-motorist statute is plain and unambiguous:
"`No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered ... unless coverage is provided ... for bodily injury or death ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom....'
"Ala.Code 1975, § 32-7-23. This Court has often stated:
"`"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'"
"DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala. 1998) (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). No interpretation of the words of the uninsured-motorist statute *1123 is necessary. Furthermore, this Court is not at liberty to rewrite statutes or to substitute its judgment for that of the Legislature. Wal-Mart Stores, Inc. v. Patterson, 816 So.2d 1 (Ala.2001); see also Omni Ins. Co. v. Foreman, 802 So.2d 195 (Ala.2001).
"Pursuant to the Alabama Workers' Compensation Act, [the plaintiff] may not recover from his co-employee for the co-employee's negligent or wanton conduct. The workers' compensation benefits [the plaintiff] received are his only remedy against his employer. § 25-5-11, Ala.Code 1975. Therefore, [the plaintiff] is not `legally entitled to recover damages from the owner or operator of an uninsured vehicle' as the plain language of § 32-7-23(a), Ala.Code 1975, or the clear and unambiguous provisions of his mother's State Farm policy require. Thus, he may not recover uninsured-motorist benefits under the policy.
"To the extent that [State Farm Automobile Insurance Co. v.] Baldwin, [470 So.2d 1230 (Ala.1985)], [State Farm Mutual Automobile Insurance Co. v.] Jeffers, [686 So.2d 248 (Ala.1996)], and Hogan [v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala. 1998),] authorize recovery under the uninsured-motorist provision of a policy despite the fact that the insured is `not legally entitled to recover damages from the owners or operators of an uninsured vehicle' as required by § 32-7-23(a), Ala.Code 1975, they are overruled."
Ex parte Carlton, 867 So.2d at 337-38.
In State Farm Mutual Automobile Insurance Co. v. Causey, supra, the United States District Court for the Middle District of Alabama, Northern Division, decided the precise issue now before this Court.[2] In Causey, a street-sweeping machine operated by the City of Montgomery ("the City") collided with the plaintiff's vehicle; the damage sustained by the plaintiff was approximately $175,000. The City settled the plaintiff's claim against it and its employee for $100,000, which represented the limits of the City's policy and the statutory maximum in Alabama for recovery against a municipality and its employee. Subsequently, the plaintiff sought recovery of UIM benefits from State Farm in excess of the statutory cap of $100,000. The federal district court framed the issue as follows: "[W]hen the alleged tortfeasor is a municipality which enjoys the benefit of a statutory cap on damages, can an insured recover UIM benefits in excess of the statutory cap from the insured's own UIM carrier?" Causey, 509 F.Supp.2d at 1027. In answering that question in the negative, the court stated:
"The policy and the statute link the definition of uninsured motor vehicle to `legally entitled to recover,' a phrase which is not defined in the policy or in the statute. [The insured] contend[s] `legally entitled to recover' denotes the damages necessary to fully compensate [the insured] for [her] injuries. State Farm contends `legally entitled to recover' is what [the insured] could be awarded in a court of law in a direct action against the City and its employee, i.e., $100,000 due to the statutory cap. *1124 There is no dispute that the municipal cap applies to [the insured's] claim against the City and its employee. See Benson v. City of Birmingham, 659 So.2d 82, 84 (Ala.1995) (holding that judgments must be reduced to $100,000 `when a defendant is determined to be a governmental entity'). State Farm characterizes the cap as a defense available to the insurance carrier because it is available to the tortfeasor. [The insured] insist[s] the cap is merely a post-verdict remedy, and that this situation is no different than where a claimant's recovery against the tortfeasor is limited by the tortfeasor's policy limits.
"The relationship of the UM [uninsured-motorist] statute to Alabama's cap on awards against municipalities and their employees has not been specifically addressed by the Alabama Supreme Court. However, that Court has clearly interpreted the phrase `legally entitled to recover' and its interaction with other statutory and doctrinal bars to recovery. Based upon a careful reading of the applicable state precedent, this court finds that [the insured is] `legally entitled to recover' under [her] UIM coverage what [she] could recover in a direct suit against the tortfeasors who damaged [her]. If, in a direct suit against those tortfeasors, [the insured's] recovery would be limited to a statutory maximum, as [the insured's] recovery is limited here by Alabama's municipal cap, then that statutory maximum applies to [the insured's] UIM claim against [her] insurer.
"This result is required by a recent opinion of the Alabama Supreme Court on the meaning of `legally entitled to recover.' In Ex parte Carlton, 867 So.2d 332 (Ala.2003), the Supreme Court expressly overruled a line of cases which had held that an insured could recover UM benefits despite bars to recovery from the tortfeasor created by statute or immunity doctrines. Id. at 338. As a passenger, Carlton was injured because of the negligent driving of his co-employee during the course of their employment. Id. at 333. He received workers' compensation benefits from his employer, but those benefits were presumably insufficient to make him whole. Id. He sought damages under the uninsured motorist coverage from his mother's insurance company, which refused to pay. Id. The insurer did not dispute that he was an insured under his mother's policy but claimed that he was not `legally entitled to recover' under both the UIM statute and the policy because he could not recover anything in a direct suit against the tortfeasors  his co-employee and his employer. The insurer's specific argument was that Carlton could not recover because Alabama's Workers' Compensation Act, Ala.Code [1975,] § 25-5-1 et seq., makes workers' compensation benefits the exclusive remedy when one is injured by a co-employee tortfeasor. See id. § 25-5-11.
"The insured in Carlton relied upon a line of Alabama cases which held that an insured could recover UM benefits despite bars to recovery from the tortfeasor created by statute or immunity doctrines. See Hogan v. State Farm Mut. Auto. Ins. Co., 730 So.2d 1157 (Ala.1998) (holding that passenger was entitled to recover UM benefits even though guest statute granted immunity to driver); State Farm Mut. Auto. Ins. Co. v. Jeffers, 686 So.2d 248 (Ala.1996) (holding that accident victim was entitled to recover UM benefits despite police officer driver's protection from liability under doctrine of Alabama substantive immunity); State Farm Auto. Ins. Co. v. Baldwin, 470 So.2d 1230 (Ala.1985) (holding that insureds were legally entitled *1125 to recover from UM carrier despite the total bar to recovery from the tortfeasor because of governmental immunity under the Feres[3] doctrine). More specifically, this line of cases supported the notion that `a defense that was personal to the uninsured motorist could not be asserted by a UM insurance carrier in defense of a claim for UM benefits.' State Farm Mut. Auto. Ins. Co. v. Mason, 982 So.2d 507, 509 (Ala.Civ.App. 2007).
"The Carlton Court referred to the holdings of Hogan, Jeffers, and Baldwin as `... carved out judicial exceptions to the legislative determination that an insured could recover uninsured-motorist benefits only when the insured was legally entitled to recover from the uninsured motorist. These were exceptions the Legislature could have provided for but did not see fit to do so.' Carlton, 867 So.2d at 336. The Carlton Court quoted with approval Justice Lyon's dissent in Hogan: `[T]oday's decision, like Baldwin and Jeffers, has construed that phrase to mean "legally entitled to recover but for a defense that does not arise out of any wrongful conduct of the insured," a defense such as immunity or an insured's status as a guest.' Id. at 337 (quoting Hogan, 730 So.2d at 1159). In adopting a literal interpretation of `legally entitled to recover,' the Court in Carlton held that the statutory language was unambiguous with `no room for judicial construction' and that `interpretation of the words of the uninsured-motorist statute' is unnecessary. Id. at 338. Carlton was not injured by an `uninsured motor vehicle' because he failed to fulfill a condition precedent of the policy, i.e., he was not legally entitled to recover from the co-employee tortfeasor. Because he was statutorily barred and therefore not legally entitled to recover damages from his co-employee, he was not entitled to uninsured motorist benefits. Id. Thus, Carlton ultimately stands for the proposition that `legally entitled to recover' depends entirely on the merits of the insured's claim against the tortfeasor under the laws of the state.
"Applying the law to this case, the Defendants are `legally entitled to recover' no more than $100,000 from the City and its employee in a direct suit against those tortfeasors for this incident. ... Thus, the court concludes that the City's vehicle is not an "uninsured motor vehicle" for purposes of the policy and statute. Defendants cannot recover more from their insurer under UIM coverage."
Causey, 509 F.Supp.2d at 1029-30.
Based on the foregoing, we agree with the federal district court's assessment that "legally entitled to recover" under the uninsured-motorist statute "depends entirely on the merits of the insured's claim against the tortfeasor under the laws of the state." Causey, 509 F.Supp.2d at 1030. In this case, Kendall could recover no more than the statutory maximum of $100,000 in damages from the County under § 11-93-2, Ala.Code 1975. Because Kendall had already recovered the statutory maximum of $100,000, she was no longer "legally entitled to recover" damages from the County or Mercer; therefore, she could not recover UIM benefits from her insurer. Accordingly, we affirm the summary judgment in favor of USAA.
AFFIRMED.
LYONS, WOODALL, STUART, SMITH, MURDOCK, and SHAW, JJ., concur.
*1126 COBB, C.J., concurs specially.
PARKER, J., concurs in the result.
COBB, Chief Justice (concurring specially).
I concur with the majority's opinion in this difficult case. I agree that the plain language of § 32-7-23(a), Ala.Code 1975, necessitates the result reached in this case. However, had I been a member of this Court when it decided Ex parte Carlton, 867 So.2d 332 (Ala.2003), I would have joined Justice Woodall in his dissent. In pertinent part, Justice Woodall wrote:
"As this Court stated in Hogan [v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998)], `the Legislature, of course, has the prerogative to change the statute so as to avoid the interpretation adopted by this Court in [State Farm Automobile Insurance Co. v.] Baldwin, [470 So.2d 1230 (Ala. 1985),] [State Farm Mutual Automobile Insurance Co. v.] Jeffers, [686 So.2d 248 (Ala.1996),] and [Hogan].' 730 So.2d at 1159 n. 1. Because the Legislature has chosen not to amend the statute, I am not convinced that this Court's earlier interpretations of the statute were inconsistent with legislative intent. Therefore, I cannot agree that this Court should overrule Baldwin, Jeffers, or Hogan."
Carlton, 867 So.2d at 338 (Woodall, J., dissenting). However, using the same logic, six years have passed since this Court decided Carlton, and the legislature has not amended the statute to avoid the interpretation of § 32-7-23 adopted in Carlton. Therefore, we cannot say the plain-language interpretation of this statute applied in Carlton is incorrect.
As this Court has previously observed: "We recognize that the legislative purpose in enacting statutes providing for underinsured motorist coverage was to protect those financially and ethically responsible enough to obtain automobile liability insurance by providing insurance to compensate them for claims based on injuries or death caused by those not so responsible." Aetna Cas. & Sur. Co. v. Turner, 662 So.2d 237, 239 (Ala.1995). This Court has also long recognized underinsured-motorist coverage as well as uninsured-motorist coverage to be a contractual relationship between the insurer and the insured. See Ex parte Barnett, 978 So.2d 729, 734 (Ala. 2007) ("[A] UM [uninsured/underinsured-motorist] insurance carrier's liability to the insured is based solely on its contractual obligations as laid out in the policy."); Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1037 (Ala.2005) ("[T]he cause of action asserted in this case under the uninsured-motorist statute is contractual...."); Howard v. Alabama Farm Bureau Mut. Cas. Ins. Co., 373 So.2d 628, 629 (Ala.1979) ("An action based on uninsured motorist provisions of a liability policy is ex contractu in nature.").
The plain language of § 32-7-23, which limits an injured party's recovery to damages that the party is "legally entitled to recover," mandates the outcome in this case. However, it also interferes with the contractual relationship between Kendall and her insurer in that it prohibits her from receiving the contractual benefits she would have received had the tortfeasor not been acting within the line and scope of her employment with a governmental entity. I have reservations as to whether this was the legislature's intent in adopting § 32-7-23. However, without a legislative history, we are limited to the plain language of the statute. As Justices of the Supreme Court, our power to rectify this situation is limited. "`"To declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative."'" City of Daphne v. City of Spanish *1127 Fort, 853 So.2d 933, 942 (Ala.2003) (quoting Sanders v. Cabaniss, 43 Ala. 173, 180 (1869), quoting in turn Thomas M. Cooly, Constitutional Limitations 91-95 (1868)). I write specially to encourage the Alabama Legislature to revisit the uninsured-motorist statute, § 32-7-23, Ala. Code 1975, as well as the statutory cap on damages that can be recovered from governmental entities, § 11-93-2 and § 11-47-190, Ala.Code 1975, to clarify whether it intended to allow for outcomes such as this.
NOTES
[1] Section 11-93-2, Ala.Code 1975, provides, in part, that "[t]he recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. ..."
[2] For purposes of this case, the only difference between Causey and the present case is the fact that Causey dealt with the application of § 11-47-190, Ala.Code 1975, which established a damages cap of $100,000 with respect to municipalities, as opposed to other governmental entities, such as the County, which are covered under § 11-93-2. Kendall does not argue on appeal that she has a claim for UIM benefits against the tortfeasor, Mercer, in Mercer's individual capacity that would fall outside the cap imposed in § 11-93-2. See Smitherman v. Marshall County Comm'n, 746 So.2d 1001, 1010 (Ala.1999) (Johnstone, J., concurring in part and concurring specially in part).
[3] Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).